Mr. Miner, if it pleases the Court, unless the Court wants a recitation of the facts, which I think are quite clearly set out in the briefs, I think the government did a stellar job of laying out all the facts, I'd like to just jump forward into what I perceive as maybe one of the more crucial elements of these arguments, which is, I think whether or not United States v. Kassoff is applicable to this case, and of course it appears to us that it is, it appears to us that that ought to be the governing law here and warrants a reversal, because the government did not demonstrate anywhere in its proof that Mr. Miner had knowledge of any sort of pending government action, and specifically I think on page 41 of our brief, we brought this out that, I'm sorry, that's the, sorry wrong brief, but anyway, we brought out the idea that there needed to be some idea, some information about an IRS pending action, subpoenas, some sort of court action, something like that, and there was no evidence at all in the government's case demonstrating that there was any knowledge of that sort of action that Mr. Miner possessed either for himself in not paying his taxes or in assisting his clients. Well, didn't he help, I can't think of his name right now, respond to a deficiency letter? In fact, actually help draft the letter? I think there was a notice, if I remember what you're talking about, there was a notice that there was taxes owed, is that what you're referring to? I think so, and he helped, I guess his client, Myskin, I can't think of his name at the moment, but... Right, no, I think I know exactly what you're talking about. And isn't that, doesn't that show that he's aware that the IRS has a proceeding against this person and is going, has an active investigation going on, and that that's enough to show his awareness to sustain the obstruction? Well, I think that, I appreciate the question because I think it kind of opens up a perspective on the government's case. That evidence wasn't shown, that's asked, just as you're kind of asking me to derive that from what was told to Mr. Miner, what Mr. Miner did. We know a deficiency letter went out, but I don't know from the facts of this case and what's in this record, what was involved prior to that record going out, what correspondence the individual he was helping had received, whether there was a notice that there was an investigation, whether something was subpoenaed, whether a bank account was, I don't know. And the facts of the case don't show it either. So I think that's part of the problem, there's a lot of inferences that the government asked the jury to make here that may or may not have been reasonable, and I think this is one of them. Are you talking about the Maslewski case? Yeah, I believe, is that what you're asking? Yeah, I mean he assisted Maslewski in knowing the IRS was investigating it. So I mean, it seems to me you say that there's no evidence of his awareness, I mean he's actively participating with Maslewski, knowing that the IRS is going after him. And I wonder, does that count as one, I mean is saying to you, you know, Judge Griffin you owe $50,000 in tax money? Well, you know the IRS has an interest, they've got a file open, and I mean he's charged with obstructing the administration of the IRS, right? And the IRS is doing their job, and the issue is whether this isn't obstructing. Right, it is, and these are very narrow, I mean I understand it's very narrow. And you can't obstruct something that you don't know is going on. And I think that's the purpose of the jury instruction, that if you do something and the effect may be that it would obstruct the IRS, but you have no idea the IRS has any investigation going on, any conduct going on, the IRS is involved, well you have, you don't have the, I guess the mens rea to obstruct. But here, he is aware the IRS has got some interest in this thing, because they got a lot of discussions going on. I didn't see anything about a settlement. That there was talk about whether they were going to have a settlement, so there must have been a demand going on. I don't know if he was involved in the settlement, I know he was involved in drafting the letter though. Yeah, he had those standard letters that he would give to his clients and respond, and then he did help this gentleman with that specific request. Whether or not that is, you know, impeding, and again, is that, is that his fault? Whether it's knowledge that the IRS is, you know, on this case, and then... Well, I mean, in a sense, doesn't that then qualify anybody who owes taxes as, you know, having knowledge? If you think about it, the IRS is an interest in every penny of unpaid taxes. Well, they don't take an active interest by sending you a deficiency notice. No, but I mean... Theoretically, they want everybody to pay their taxes, but they don't, they don't open a file on it and start making efforts to collect those taxes, but once they do that, if you obstruct their administration of doing it, I think that's what the crime is, isn't it? And I'm wondering whether this amounts to that. I guess that's what... Okay, does that go more to the sufficiency argument that you also have here, that this just isn't sufficient, as opposed to his awareness? I mean, I know you raised them both. And I think they're hand in glove. Hand in glove. I really do, because first of all, they have to find, I mean, and the jury should have had to find that he had this knowledge, but they were not asked to. And I think that that's a deficiency here, too, probably a reversible deficiency. Of course, they provided evidence that he knew. So then the issue as well was, if there were, if there was an error, was it harmless at least it was, was it harmless, since the jury had plenty of evidence that your client knew that these disputes were going on? I understand what you're saying, Your Honor. I guess my response is, is it sufficient for us to look and say, well, there are facts, if the jury is asked the question, there are facts that they could have answered yes, they without being asked that element, or are they required, are we required in a jury trial under due process to have the jury actually answer the question? And here the jury was never asked the question. But if the fact is not genuinely in dispute, does it make any difference? Well, again, and now that comes back to the discussion you and I just had. Is that fact generally not in dispute? Is the filing... Well, what he did is not in dispute, is it? No, no. I mean, it's very clear what he did. He assisted the letter, okay. Now that's just a factual matter, that's a legal issue now, is it not? Whether that constitutes or may constitute obstruction of a proceeding? I mean, I don't... Wouldn't the jury still... The judge would instruct them on the law, and the jury would take that fact and apply it to the law to determine whether or not that fact met the standard. We don't necessarily have to have the jury render a verdict as to a fact that is not in dispute. And even though normally they would render special verdicts of this fact, this fact, and this fact, if one fact really is not genuinely in dispute, well, even though they probably should have, what does it matter? It's not material. It's not material. Well... I guess that's my question is, all right, maybe the jury instruction should have been given, but is his awareness, which is the factual issue, is it really material in the case? Yes. His awareness is still material because the government is arguing this comes in under the omnibus clause. So his awareness is material. And the issue here for the jury to decide would have been whether or not the deficiency letter was sufficient indication that he was aware. Was he asked that... He testified, right? Yes, he did. And was he asked questions to that nature? Whether he was aware of a pending... I don't remember any testimony where he said that he was aware. I don't have any recollection of that in the transcripts anywhere. I certainly think the government would have had that with light surrounding it if he had. I guess they can answer it if you don't know. Yeah. So... But I didn't see it. I mean, I didn't see an admission of that type in the record. Were you a trial counsel? I was not, Your Honor. I was appointed just for the appeal. And so I had to review the record just like you did. So I think that, you know, from the main standpoint, that to me is the big question that this court has to answer is, okay, we have that issue. A, should the jury have been asked that question? And B, is it an indication that he understood, had the quote mens rea? Did he have it or not? And letter of a deficiency, is that the same as what this court has found previously to be a notice of a pending action? Or now are we expanding a little bit? Because I didn't see that specifically in the dicta. You think under that that there has to be a court-filed action or something? What do you think that constitutes? Yes, Your Honor. That's how I'm interpreting it. Of course, I'm interpreting it in a light most suitable for my client. Don't we have a case that refers to an audit as a proceeding? Yes, but there's no audit here. Okay. But an audit is not an administrative proceeding. Sometimes they're very formal, sometimes they're rather informal. But that's certainly not an administrative proceeding. True. And this didn't even go that far. Okay, so because we've already said audits qualify, the proceedings are not limited to administrative proceedings. Right. On the other hand, what is an audit? An audit is a physical action that the IRS is going to send an agent out or bring in your books, bring in your documents, let's see all your records. So what happened here, they just sent them a bill, said, hey, you're deficient, pay your taxes. We're talking about levels, I think. Is that, does that meet the level of the action as defined under this statute? Congress intend to, for the obstruction statute to apply to this? I mean, why would not Congress? I mean, if the IRS has an investigation going on, but it's, you know, it's at the point of a deficiency letter, do you think Congress intended the people not to be punished for obstructing at that point? And why would that make any sense? Great question. Would they intend not to be punished for acting at that point in an obstructionist way? And again, we're assuming another decision here. We're assuming that what Mr. Minor did was, at that point, what that letter meant was going to qualify it under the rest of the statute as something to interfere with it. So we have to assume that in order to get to the next part of your question, which is, I have to do the, I guess I don't really know, because there has to be some level to. I mean, when do we cross from the Freedom of Speech, Freedom of Information Act, freedom to question your government authorities, to an act of obstruction? Where is that line drawn? And that's really, I think that's really what we're getting to here. Okay, you're saying an audit is on the far side of the line, and now you're, you know, if you're interfering with an audit, then you're obstructing. Okay, that's on the obstructionist side. If you're sending a letter to find out more information, whether it turns out to be a to find out more information about this deficiency, because you're saying there's something wrong with the filings, is that obstructionist or is that permissive? Is that legal or illegal? And I think in this particular case, that is a line that we have to figure out here, and we're saying it's not. We're saying you have to leave it on the side that's not, because the citizen has to be allowed to do something. Maybe Mr. Minor, I don't know what his, whether we find him in good faith here or not. I understand exactly where the court's coming from on that point, but we have to also look at how this is going to apply to all citizens. We may not like Mr. Minor, may not like his stands and his books and his videos and his website, but how does this apply to every citizen who may legitimately be saying, hey, I want information about this before I agree I owe you $68,000. Counsel, you might want to wind up. Your light's been on for quite a while. I'm sorry, I was trying to respond to a question. I got a little long-winded. I am done. I think I did reserve time for rebuttal, but did I use it up? You'll still have your rebuttal. Okay, thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court, counsel. My name is Frank Dale. I'm with the U.S. Attorney's Office for the Eastern District of Tennessee and I represent the United States of America in this matter. And the appellant, David Minor, is a notorious tax protester who has spent years promoting and selling bogus services and products that were intended for the sole purpose of helping people to illegally avoid the payment of their taxes. As the court knows, he was indicted on one count of corrupt endeavor in violation of 26 U.S.C. 70-12 and two counts of failing to file tax returns. As the latter charges are not being raised in this appeal, I won't go there today. I'd like to go to the issue regarding 70-12 that has been raised by counsel today. And as the court is aware, there is some inconsistency among the rulings by the circuit on this matter, but I'd like to offer that there is a manner in which those rulings can be read in a manner that does not offend the established authority and allows the conviction here to be affirmed. I'd also like to note that there was plenty of evidence of knowledge of ongoing IRS proceedings as presented in this case and at the trial of this matter. Turning to the court's 1998 decision in the United States v. Gossuth, that was a matter of first impression for this court on whether the 70-12 statute required some knowledge of the pending IRS proceeding of which the defendant was aware, and the court found that it was. Less than a year later in this court's Bowman decision, this circuit reached a totally different decision, different conclusion, and it held that Gossuth had to be limited to its specific facts and holding. Then later in 2004, the court then in the McBride case set forth as part of the applicable elements for 72-12 that the defendant must be acting in response to some pending IRS action of which he was aware. In other words, stating the Gossuth ruling but not reiterating the McBride limitation on Gossuth. What I'd like to point out to the court. Would your position be we should ignore Bowman to the extent it conflicts with Gossuth's since Gossuth was the prior opinion of this court? Obviously, one of our panels can't overrule another panel. Well, and your honor, I think that is the issue here. I think it's an issue of where that, you know, certain facts may lead to certain legal decisions that are perhaps not exactly where the court wants to go on further matters. And I think if we look at the facts that apply, the facts of Gossuth versus the facts of Bowman, we see a great distinction here. Like in the Gossuth case, we're dealing with an individual who was accused of failing to maintain proper books and records, depositing and transferring funds where they couldn't be accounted for, and then failing to disclose certain types of assets and income on his tax returns. And the district court found, no, this does not violate 7212 because there wasn't a knowledge of an ongoing investigation or proceeding by the IRS at that time. This is not the kind of conduct that someone should be criminalized for if they had no knowledge that they were being investigated. But then we turn to the Bowman case, and we look at what happened in Bowman where Bowman deliberately filed false and fraudulent 1099 and 1096 forms to try to get the IRS to audit his creditors. Okay, so there's a great distinction between the two of those. And because of that, the Sixth Circuit decided to hold Bowman to its specific facts and ruling and find that there was no requirement of a specific knowledge of an ongoing IRS proceeding as it applied in Gossuth. And that has been how the other circuits, I believe the First Circuit, the Tenth Circuit, and many other district courts have interpreted the Gossuth case and the limitations placed on it by Bowman. And if we go further to the McBride case, similarly that was a case with very specific facts where the defendant had filed a fraudulent petition to place into involuntary bankruptcy a revenue officer that was trying to collect taxes from his girlfriend. Okay, and he plainly had knowledge that there was an ongoing proceeding. So I think in harmonizing all of these rulings, the clear picture of the law is that in this sort of instance, it is not necessary there being awareness of an ongoing IRS proceeding. It wasn't required that the court instruct the jury in that manner. In fact, the instruction that the defendant requested in this case would have gone far outside of the scope of the Gossuth case because it wanted an instruction that said that there must be knowledge of some ongoing criminal or civil investigation. And I believe it was Judge Griffin that you noted that an audit comes within the scope of Gossuth, but it would not have come within the scope of the instruction that was sought by the defendant in this case. Now, turning to the facts of this case, which... Is that the end of the case, that his jury instruction was not an accurate statement of the law, and therefore the trial judge did not abuse her discretion by not giving it since it would have been inaccurate? I think the court could come to that conclusion. Yes, Your Honor, I think that could be the end of the matter because of that. But let me respond to one point that was raised by Mr. Fogle. And, you know, we turn to the record itself, looking at the testimony of Myslowski. Myslowski was... He had read for the jury on the stand regarding his interaction with the IRS. And he stated, this is on page 837 of the record, I was on an installment agreement for years 97 through 98. I filed returns. I used Joy Foundation. Going on further, federal tax liens were filed. He had ongoing IRS problems. He was trying to avoid those problems. That's why he went to David Minor. Recall the facts of this case. When Special Agent Lee encountered Mr. Minor, he had a U-Haul in front of his house. He said, it's just personal possessions there. There's no files there. Well, guess what? There were 175 client files in that U-Haul. And as we presented in evidence at the trial, many of those were faxes and letters that were from the IRS because Minor told his clients, when you get a letter or a matter from the IRS, send it to me. I'll help you respond to it. Was Minor asked about this when he testified? I did not ask him about that, Your Honor, because he'd been asked about that previously, and I didn't think he'd get anywhere with that. Instead, what we did is we put witness after witness on the stand who testified, yes, that letter that was in Mr. Minor's possession, that was my letter. I received from the IRS, and I sent it to David Minor. I'm surprised you didn't ask him that anyway. Well, I asked him a lot of questions, and frankly, I didn't want to be lied to. So, you know, I didn't go further with that issue. Well, wouldn't it have been good if the district court had instructed the jury in the line with the statute and just say in the due administration of the IRS laws or something like that, kind of in a general way? I believe that was in the overall instruction of the court in defining the law itself. There was not a part of the instruction that said that there was, that there needed to be knowledge of an ongoing IRS proceeding, but there is no possible way the jury could have not known that based upon all of what the jury heard through the testimony of numerous witnesses. You know, going to the testimony of Mr. Lewis, I'm looking at page 997 of the record. That's what he was in business for, actually, I suppose. Exactly. Exactly. That was what this program was for. I will respond to IRS correspondence you get. I'll prepare letters to get your I in that form, because everybody knows that individuals have no obligation to file tax returns or pay taxes. So we'll point out how in the IMF, the IRS has coded you as a corporation. And therefore, once we correct that error, you're going to fall off the IRS radar. You can't, they can't so much as send you a postcard after that. And so that was part of the IMF decoding process. The other part was the common law trust effort, which was also purely a tax avoidance issue, entered into people like Mr. Palaio, who testified, who talked about they had IRS problems. They had stopped filing returns. Individuals who had received notices of levy or IRS action, and asking Mr. Minor, what do we do about this? And so that was plainly part of the evidence in the case also. So whether the court wants to stay with its KASOOF ruling in this case, or go with a Bowman ruling, either way, this record is replete with information that supports the jury knowing that there was an ongoing IRS proceeding that the defendant was trying to obstruct or impede. And that much is clear just from his own papers, just from his own materials. And in that regard, this is even a stronger case than the Bowman case. And, you know, I understand the slippery slope argument that counsel for the appellant is making that really couldn't this apply to anyone who has unpaid taxes. But with all respect, that's not the case here. These were individuals who had, who were going to minor because they wanted to avoid the payment of their taxes. And they were going to do this through efforts to obstruct the IRS, through letter writing campaigns, through FOIA and privacy requests, inundating the IRS with paper, that knowing, with Minor knowing that the FOIA unit could not amend somebody's tax record. You could do that through filing a 1040 tax return. And that's the one thing that David Minor never told them to do. Except joking at the last page of his common law trust form. He told, after you've established this thing and put all of your assets in this common law trust, and you've established a bogus employee identification number, and you've gotten banks to prepare accounts for you without a bogus return, then file a form 1040 or whatever else you want to do, then in parentheses, just kidding. So that was definitely what Minor was trying to do in this case. This was not an effort of taxpayers wanting to get more information about their tax liabilities. You look at the letters that were submitted, they are more in the nature of a manifesto. These are my positions. And if you don't tell me your disagreement within 30 days, then we're going to assume that I'm right. So I think I've covered all of the issues raised. If your honors have questions, I'm happy to address them. What about this issue of whether Agent Lee improperly testified as to the defendant's intention? Do you have anything to add on that issue beyond what's in your brief? Nothing really to add, your honor. I think I covered this. She was testifying as to her own investigation, her own knowledge. She'd examined all the files herself. She'd interviewed the witnesses who were willing to talk with her, and then she testified her own knowledge. There was fact, there was opinion, but the opinion falls squarely within the scope of 701. It was not expert opinion, but it was proper lay opinion testimony by Special Agent Lee that was intended to help the jury to understand the facts in this case. Doesn't it violate 704B, which states that even an expert witness must not state an opinion about whether a defendant did or did not have a mental state or condition that constitutes an element of the crime charge or of a defense? I don't think it goes to that point. It doesn't go to that extent. Didn't he say that this was intended to do this, and the intent is the defendant's intent, isn't it? Isn't that how he framed it? I think as it goes to the issue of the defendant's knowledge. Well, he said, didn't he use the word intent? These documents were intended to do this, in my expert opinion? Well, she didn't say expert opinion. In my opinion, this was done with the intent. I mean, I can read the testimony to you if you want, but that was my recollection of what it was. I think I do understand or do know the testimony you're talking about, Your Honor. That's really argumentative, and it should be reserved for counsel, not a witness who would say that. I have to say that she may have gone past where she should have gone in making those statements. But I would note that she was there for the entirety of the trial, and other individuals, including Mr. Puleo, Mr. Mislewski, Mr. Lewis, others had gotten up, and they had testified to the intent of this also. And in fact, Mr. Minor's own papers that he prepared, that he sent out, told the intent as well. Said that you have to threaten the appropriate people, and this is the intent behind it. I think if anything, she was merely reiterating what other witnesses and what Mr. Minor's own materials had said. Your argument is harmless air here. Yeah, that is my position. I don't think it contributed to the verdict in this case. It was merely factual information that had been brought in through other witnesses at this point. And whether she had said that or she had not said that, I think the jury would have reached the same conclusion as to that issue. And I do understand the problem as that relates to the court's ruling last year in the Freeman case, the problem of spoon-feeding to the jury your position in the case. Harmless beyond a reasonable doubt? I believe so, yes. There's error. I mean, you're not conceding error, right? I'm not conceding error, Your Honor. If there were error, that you would take the position it's harmless beyond a reasonable doubt? I would, and I believe that rather than being erroneous in that respect, it was merely a reiteration of testimony that had been introduced earlier, both in Mr. Minor's own writings and in the testimony of witnesses earlier about the purpose of this program. And so in that sense, it was not an expression of her opinion. And I realize I'm out of time, but I'm happy to answer questions. It's kind of a fine line that the effect of this would be to do this, but he probably intended the effect. I mean, once you say the effect is this, it's not a mistake that the effect happened. I mean, he had to intend the natural inference. He intended the effect to say, yes, so this was intentional conduct by him. It's kind of an odd rule anyway, but OK. Thank you. Thank you, Your Honors. I could use another 15 or 20 minutes after that. The government, I think the thing that struck out and rang the bell for me quite often there was, well, but there's enough to infer that the jury would have. And the government said on Lee's testimony, well, there's enough to infer the jury would have anyway. And if we'd given them the instruction, well, they probably would have done it anyway. So the government is basically saying to you it's OK for Lee to have speculated on what the purpose was here to form her opinion about what the purpose was here, because factual testimony was given about what he did. But you see, the government blurred that line real quick. OK, there is a distinction. Facts were presented. Lee inferred motive, inferred intent, and offered an opinion about those facts. And that was improper. But was it harmless error or not? No, it was not. Why not? Because they, OK, look at the strategy here. And the government does this all the time. I've tried cases against them, and I've seen it more than once. They put on somebody who sounds authoritative, who sounds to know what they're talking about, to tell the jury what to think about the facts. And that's what this agent did. The agent got up, he asked her questions, and she told the jury what to think about the facts. I mean, that assumes the jury can't think about the facts on their own, that they have no ability to assess the facts on their own. And if an expert tells you something, the jury's going to have to leave it. I don't buy that. That's not what I'm saying, here. Here's the problem we have. Once again, we don't know what the jury would have done without that illegal testimony, without that improper testimony. We have the proper testimony. But isn't it clear that the effect of all this is to obstruct the government? And what other inference do you have that this was his intent to do it? The witness isn't supposed to say, yes, I've looked into his mind, and in my view, he intended to do it. But what other inference is there other than he intended to do it? I mean, it wasn't a mistake, was it? What, that he intended to? The effect of his actions were not a mistake. I mean, the effect of his actions are the natural result of them. Right, and that's for the jury to decide what the effect was, not for the jury. How could you come to any other conclusion, though? OK, well, let's look at it this way. What he may have done was irritating and frivolous, but he did it in the information distribution. Did it as a joke? No. What other reason would he have to do it other than to intend to obstruct? I mean, I mean. OK, but what he did was what he did illegal under that statute. And here's the thing, he did it to a different department than is the one that's doing the administration here. He did it to the department that's supposed to give out information. They have no control over these documents. They told it to him. They told it to us. The government proved it. Counsel, I'm afraid you're out of time. I know, and there was so much more I wanted to say, but thank you, and I appreciate your time. Thank you so much, and I believe you were appointed under the Criminal Justice Act, so the court would like to thank you for your representation of Mr. Minor. Thank you, Your Honor. I appreciate it. Thank you. Case is submitted. There being no further cases on oral argument, you may adjourn court.